THE STATE OF OHIO, APPELLEE, *v.* ROBINSON, APPELLANT.

(No. CA88-06-047—Decided January 23, 1989.)

*George E. Pattison,* prosecuting attorney, and *Lawrence R. Fisse,* for appellee.

*Gregory P. Moran,* for appellant.

JONES, P.J. Defendant-appellant, Dan D. Robinson, appeals his conviction for failing to securely confine or restrain a vicious dog in violation of R.C. 955.22(D)(1).

On September 29, 1987, the Clermont County Chief Dog Warden and two Clermont County Deputy Sheriffs arrived at appellant's Nicholsville, Ohio, residence in response to a telephone call that several pit bull dogs were running loose. The officials discovered nine dogs in an unlocked fenced enclosure. The animals were

confiscated and appellant was charged with multiple violations of R.C. 955.22(D)(1) in addition to several other charges.

Appellant filed several pretrial motions, including a motion to dismiss the charges. The trial court conducted an evidentiary hearing after which it denied the motion to dismiss. Ultimately, appellant pleaded no contest to one count of R.C. 955.22(D)(1). In exchange, the state dismissed all remaining charges. Appellant was found guilty, fined and sentenced, and ordered to make restitution to the county for the upkeep of the dogs.

In a single assignment of error, appellant contends that:

"The trial court erred in overruling plaintiff [*sic*]-appellant's motion to dismiss."

Appellant was convicted of violating R.C. 955.22(D)(1), which reads as follows:

"No owner, keeper, or harborer of a dangerous or vicious dog shall fail to do either of the following, except when the dog is lawfully engaged in hunting or training for the purpose of hunting, accompanied by the owner, keeper, harborer, or a handler:

"(1) While that dog is on the premises of the owner, keeper, or harborer, securely confine it at all times in a locked pen which has a top, locked fenced yard, or other locked enclosure which has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained[.]"

Under R.C. 955.11(A)(4)(a)(iii), a "vicious dog" includes any dog which:

"Belongs to a breed that is commonly known as a pit bull dog. The ownership, keeping, or harboring of such a breed of dog shall be prima-facie evidence of the ownership, keeping, or harboring of a vicious dog."

The above definition of "vicious dog" applies to R.C. 955.22. R.C. 955.22(A).

These statutes single out one breed of dog, the pit bull, as inherently dangerous to society. Appellant claims, however, that the term "pit bull dog," as used in the statutes, is vague and overbroad. The issue to be decided in this appeal is whether the statutes infringe upon pit bull dog owners' constitutionally protected right of due process.

The alarming rise in fatalities and severe maulings of people by pit bull dogs has caused several municipalities and states to consider or adopt legislation limiting or prohibiting the sale or possession of pit bulls. See Note, The New Breed of Municipal Dog Control Laws: Are They Constitutional? (1984), 53 U. Cin. L. Rev. 1067. The physical characteristics of pit bulls, the historic use of the dogs as fighters, and the increasing number of unprovoked and unexplained attacks on people has caused the pit bull to be perceived as presenting a threat of danger, warranting a legislative response. *Id.* at 1075-1076. There can be no doubt that dogs in general are legitimate objects of the state's police power. Almost a century ago, the United States Supreme Court held that dogs are "subject to the police power of the State, and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens." *Sentell v. New Orleans & Carrollton RR. Co.* (1897), 166 U.S. 698, 704.

Any discussion of the constitutionality of legislation must begin with the premise that all legislative enactments enjoy a strong presumption of constitutional validity. *South Euclid v. Jemison* (1986), 28 Ohio St. 3d 157, 28 OBR 250, 503 N.E. 2d 136; *Mominee v. Scherbarth* (1986), 28 Ohio St. 3d 270, 28 OBR 346, 503 N.E. 2d 717; *Hoover v. Bd. of Franklin Cty. Commrs.* (1985), 19 Ohio St. 3d 1, 19 OBR 1, 482 N.E. 2d 575. If possible, legislation must be construed to uphold its con-

stitutionality and all doubts are to be resolved in favor of upholding the statute. *Oregon* v. *Lemons* (1984), 17 Ohio App. 3d 195, 17 OBR 385, 478 N.E. 2d 1007. Although courts may liberally construe a statute to save it from constitutional infirmities, they cannot simply rewrite laws in order to render them constitutional. *State* v. *Wear* (1984), 15 Ohio App. 3d 77, 15 OBR 106, 472 N.E. 2d 778.

Appellant claims that the statutes are vague because they fail to clearly define the prohibited conduct. Generally, the void-for-vagueness doctrine requires that criminal statutes define offenses with sufficient definiteness that ordinary people can understand what conduct is prohibited and in such a manner that encourages neither arbitrary nor discriminatory enforcement. *Kolender* v. *Lawson* (1983), 461 U.S. 352; *Hoffman Estates* v. *The Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489; *State* v. *Earlenbaugh* (1985), 18 Ohio St. 3d 19, 18 OBR 16, 479 N.E. 2d 846; *State* v. *Reeder* (1985), 18 Ohio St. 3d 25, 18 OBR 21, 479 N.E. 2d 280. In order to avoid a finding of vagueness, a statute must give sufficient warning so that individuals may conduct themselves so as to avoid that which is prohibited by law. *Rose* v. *Locke* (1975), 423 U.S. 48.

Appellant relies on our decision in *State* v. *Wear, supra,* as support for his claim that R.C. 955.11 and 955.22 are vague and violate due process. In *Wear,* we found R.C. 959.15 (the animal fights statute) unconstitutionally vague and overbroad because it proscribed an individual's presence at a cockfight scene, regardless of whether a fight was in progress, and penalized the constitutional right of association. The statute also failed to require a culpable mental state for those charged with being present at the scene of a cockfight.

In the case at bar, the statutes do not prohibit the ownership or possession of pit bulls. Rather, the laws require pit bull owners to take certain measures to keep the dogs securely confined and restrained. The due process question in the case at bar is the result of the legislature's decision to single out one breed of dog for stringent control. See Note, *supra,* at 1075. Because it is difficult, if not impossible, to identify a dog's breed with certainty, laws of this nature run the risk of being unconstitutionally vague. *Id.* The question we must decide is whether the term "commonly known as a pit bull dog," as used in R.C. 955.11, is so vague as to violate due process.

We note that *Wear, supra,* like most cases raising a vagueness challenge, concerns laws which define conduct, not objects. See, *e.g., Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156 (vagrancy laws); *Earlenbaugh, supra* (reckless operation of motor vehicle); *Reeder, supra* (disorderly conduct); and *State* v. *Garfield* (1986), 34 Ohio App. 3d 300, 518 N.E. 2d 568 (contributing to unruliness of a child). Courts have, however, frequently upheld against vagueness challenges laws which, like pit bull statutes and ordinances, describe objects. See *Hygrade Provision Co.* v. *Sherman* (1925), 266 U.S. 497 (kosher food); *Stewart* v. *Trumbull Cty. Bd. of Elections* (1973), 34 Ohio St. 2d 129, 63 O.O. 2d 227, 296 N.E. 2d 676 (residence district); *Southeastern Fisheries Assn., Inc.* v. *Dept. of Natural Resources* (Fla. 1984), 453 So. 2d 1351 (fish trap); *Potomac Sand & Gravel Co.* v. *Governor of Maryland* (1972), 266 Md. 358, 293 A. 2d 241, certiorari denied (1972), 409 U.S. 1040 (tidal marshlands); and *Bridgeford* v. *U-Haul Co.* (1976), 195 Neb. 308, 238 N.W. 2d 443 (truck).

We accordingly find that our earlier decision in *Wear, supra,* is not controlling in the case at bar. Ap-

pellant is correct in his contention that *Wear* defines the due process standard for vagueness which is equally applicable herein. It is there, however, that the similarities end. In *Wear,* we were concerned with the unconstitutional limits imposed upon constitutionally protected conduct. In this case, we examine a vagueness challenge to a law defining an object — an object which, as we have seen, is subject to the state's police power. *Sentell, supra.* For the reasons expressed below, we conclude that the statute at bar, unlike the statute in *Wear,* satisfies procedural due process.

Neither party has cited any case law addressing the constitutionality of R.C. 955.11 and 955.22 nor has our research produced any relevant citations. We have, however, found some cases which address the same or similar issues.

In *Garcia* v. *Tijeras* (1988), 108 N.M. 116, 767 P. 2d 355, a New Mexico Court of Appeals upheld a municipal ordinance banning the ownership or possession of a breed of dog "known as American Pit Bull Terrier." As in the case at bar, the animal owners in *Garcia* challenged the ordinance as violating due process on the basis of vagueness for failing to adequately define "American Pit Bull Terrier." The trial court found that American Pit Bull Terrier is a recognized breed readily identifiable by laymen, and rejected the dog owners' argument that the ordinance lacked meaningful standards that could be used to identify those dogs subject to its prohibition.

The owners argued that "American Pit Bull Terrier" was a term used exclusively by the United Kennel Club ("UKC"), whereas the American Kennel Club ("AKC") used the term "American Staffordshire Terrier" to register the same breed and that the AKC also registered Staffordshire Bull Terriers and Bull Terriers all of which might be described as pit bulls. Based on the evidence presented to the trial court, the appellate court concluded there was no difference between an American Pit Bull Terrier and the American Staffordshire Terrier. Several witnesses testified that they could recognize an American Pit Bull Terrier by its physical characteristics and appearance. Thus, the appellate court reasoned that the evidence supported a determination that an "American Pit Bull Terrier" is a breed of dog recognized by its physical appearance and that the Tijeras ordinance included not only those dogs actually registered under the UKC standards, but those dogs also "recognized" as being American Pit Bull Terriers or American Staffordshire Terriers.

The court concluded that the owners had notice that the ordinance proscribed the conduct in which they were engaged. Accordingly, the ordinance did not violate the vagueness doctrine or deprive the owners of due process of law.

In *State* v. *Peters* (Fla. App. 1988), 534 So. 2d 760, the state appealed a county court order invalidating a North Miami ordinance regulating the ownership of pit bull dogs. The ordinance defined "pit bull dog" as any dog "which exhibits those distinguishing characteristics" which "substantially conform" to the AKC's standards for American Staffordshire Terrier or Staffordshire Bull Terrier or the UKC's standards for American Pit Bull Terrier.

The defendants argued that the AKC and UKC standards were vague in and of themselves. The defendants also challenged that language identifying as a pit bull those dogs which "substantially conformed" with the standards as well as a section of the ordinance stating that a dog's "technical deficiencies" in conforming to the standards shall not be construed to in-

dicate that the dog is not a pit bull under the ordinance.

The Florida Court of Appeals reversed the county court's finding of vagueness, holding that the ordinance was sufficiently definite in describing the prohibited conduct so that an ordinary person could know how to comply with its provisions. The owner or prospective owner of a dog need only look at each of the standards and determine whether the dog is described by any of them. The use of language such as "technical deficiencies" and "substantially conformed" did not constitute a violation of due process. The ordinance's allowance for an insignificant or insubstantial variation in the dog's conformance to the definition of the ordinance did not render the ordinance void for vagueness.

Finally, the Allen County Court of Appeals considered a municipal pit bull ordinance in *Lima* v. *McFadden* (June 30, 1986), Allen App. No. 1-85-22, unreported. In that case, the appellate court reversed a municipal court decision in which the lower court determined that Section 618.16(B) of the Lima Ordinances was unconstitutionally vague. The ordinance provided that: "No person shall keep or harbor more than one pit bull dog at his residence." The ordinance, like R.C. 955.11, contained no specific definition of "pit bull dog."

In formulating a definition for "pit bull dog," the court of appeals cited numerous references, including the AKC's standards for Bull Terriers. The court found that the ordinance was not vague, but pertained to a particular breed of dog with characteristics generally conforming to those set forth in the references. Whether any particular animal fell within the classification, the court concluded, was an issue of fact to be determined on the basis of the evidence presented.

During the hearing on appellant's motion to dismiss, one of the deputies testified that appellant referred to his dogs as "pits" when the authorities arrived to confiscate the animals. The evidence also indicated that appellant, on his 1987 application for a kennel license, identified the breeds kept on his premises as "American Pit Bulls." A veterinarian who examined the dogs at the request of the county dog warden testified that the dogs were pit bulls although she could not state beyond a reasonable doubt that appellant's animals were purebred pit bulls.

The definition of "pit bull" may indeed be somewhat elusive. It is abundantly clear, however, that appellant understood his dogs to be "pit bulls" as did other witnesses at the hearing. We are reminded of Justice Potter Stewart's discussion of the definition of "hard-core pornography" and the difficulty he encountered when attempting "* * * to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that." *Jacobellis* v. *Ohio* (1964), 378 U.S. 184, 197 (Stewart, J., concurring).

Although the formulation of a definition of "pit bull" may be equally enigmatic, it is clear that such dogs have certain physical characteristics in common. They are basically "bull-terriers," "a short-haired terrier of a breed originating in England by crossing the bulldog with terriers to develop a dog of speed, hardihood, and powerful bite for use in dog fights, dogs of this breed having great courage and strength but being built on the trim lines of a terrier." Webster's Third New International Dictionary (1981) 295; *McFadden, supra.*

The breed's history has been

traced to the Middle Ages in England when bull baiting was a sport and a tethered bull would be matched against a pack of dogs. When the English outlawed bull baiting in 1835, the pitting of one dog against another became popular. Note, *supra,* at 1076, fn. 61. These dogs "are known for their great strength and for their willingness to fight to the death." *Id.* at fn. 60.

We are convinced that the language of R.C. 955.11 does not refer to purebred pit bull dogs. Rather, the phrase "commonly known as a pit bull dog" refers to those animals which display the physical characteristics generally conforming to the various standards normally associated with pit bulls. It is apparent that "pit bull" does not refer to one particular breed, but encompasses several breeds or a cross-section thereof. Although the statute lacks a specific definition of "pit bull dog," mathematical certainty is not always essential to constitutionality. See *Grayned* v. *City of Rockford* (1972), 408 U.S. 104, 110. The dangers posed by pit bulls to the general public have been well-documented. *Tijeras, supra; Peters, supra.* R.C. 955.11 and 955.22 are designed to protect the general public from the potential threat of improperly restrained pit bulls by requiring owners, keepers and harborers to securely confine and restrain these dogs.

Appellant also claims that R.C. 955.22 and 955.11 violate due process because they are also overbroad. The overbreadth doctrine prohibits a statute from making criminal constitutionally protected or innocent conduct. *Broadrick* v. *Oklahoma* (1973), 413 U.S. 601. Generally, the overbreadth doctrine applies only if the legislation is applicable to conduct protected by the First Amendment. *Dandridge* v. *Williams* (1970), 397 U.S. 471. The case at bar does not involve First Amendment rights. Compare *Wear, supra* (statute infringed upon defendants' right of association). Accordingly, we reject appellant's overbreadth challenge to the statutes.

We conclude that R.C. 955.22 and 955.11 adequately and sufficiently define "pit bull dog" so that ordinary individuals may conduct themselves to avoid that which is prohibited by law. The statutes are neither vague nor overbroad and do not violate appellant's constitutional due process protections. The assignment of error is therefore overruled.

*Judgment affirmed.*

HENDRICKSON and KOEHLER, JJ., concur.