CITY OF AKRON *v.* TIPTON.

(Nos. 89 CRB 6541, 89 CRB 6548, 89 CRB 6549, 89 CRB 6551 and 89 CRB 6552—Decided October 31, 1989.)

Akron Municipal Court.

*Gregg Manes,* assistant city prosecutor, for the city of Akron.

*James R. Hodge,* for defendant.

TED SCHNEIDERMAN, J. On September 26, 1989, the defendant, Lawrence E. Tipton, through his attorney, filed a motion to dismiss on the ground that the ordinance under which the defendant is charged is unconstitutional on its face. The defendant requested an evidentiary hearing, and evidence was received on October 5, 1989 and concluded on October 10, 1989.

The motion to dismiss claims that the ordinance is unconstitutional for the following reasons:

(1) it violates the Fourteenth Amendment to the United States Constitution with respect to due process, both procedurally and substantively;

(2) it violates the Equal Protection Clause;

(3) it violates the right to travel; and

(4) it is vague.

At a conference held on September 28, 1989, between the assistant city prosecutor, defendant's counsel and the court, the defendant's attorney indicated that he was raising three issues by his motion to dismiss, and they are as follows:

(1) Pit bulls are not identifiable as a breed.

(2) Pit bulls are not vicious *per se,* and there is no rational basis to single them out as vicious.

(3) Dogs have a right to travel.

For purposes of the motion to dismiss the court makes the following findings of fact:

(1) Effective August 8, 1989, the Council of the city of Akron amended its ordinances relative to the control of dogs, and specifically amended Section 92.25 of the Akron Codified Ordinances and the penalty section contained in Section 92.99. (A copy of Section 92.25, as amended, is attached as an Appendix.)

(2) Defendant is an Akron resident, and on August 26, 1989 the defendant was charged in five separate cases with six counts in each case, including four counts in each case with violations of Section 92.25.

(3) There is not a registered dog breed known as "pit bull" or "pit bull terrier," and they are generic terms. There are registered breeds of dogs known as "Staffordshire Bull Terrier," "American Pit Bull Terrier" and "American Staffordshire Terrier." These breeds are often referred to as "pit bulls" or "pit bull terriers."

(4) There are mixed breed dogs which contain an element of breeding from a Staffordshire Bull Terrier, American Pit Bull Terrier or American Staffordshire Terrier, and which have characteristics identifying the dogs as being partially of the breed of Staffordshire Bull Terrier and American Staffordshire Terrier. These dogs are commonly called "pit bulls" or "pit bull terriers."

(5) Pit bull dogs or pit bull terrier dogs are from the bull terrier family and they have unique physical characteristics. They include having a short stiff coat, curled tail, a proportionally large block-type head, broad shoulders with short powerful legs, eyes generally wide apart, and normally within a thirty-to-seventy pound range. They are dogs with extremely powerful jaws and bite. Pit bulls have strength and speed far beyond those of other dogs of their size, and they have great courage and tenacity. These characteristics are not always present, however, and they do vary.

(6) The pit bull dog or pit bull terrier dog does have a personality not normally found in other dogs. This includes the capacity to change from being docile to extreme aggression toward other animals and humans. This may occur within seconds and without warning. Pit bull terriers do not normally growl or snarl before attacking. Unlike most other dogs, pit bull terriers are known to have the capacity to continue an attack until forced to stop. Once aroused, pit bull terriers will not normally back off from a fight and often continue the combat even after accumulating serious injuries, and have been known to fight to their deaths. A pit bull terrier has great strength in its body and can maintain its hold while tearing its prey with great force. These dogs have a unique fighting ability which can cause very serious injury or death.

The issue placed before this court by the defendant's motion to dismiss is whether Section 92.25 is unconstitutional on its face and in violation of the provisions of the United States and Ohio Constitutions.

Upon consideration of the evidence submitted at the evidentiary hearings, the defendant's motion to dismiss and memorandum in support and in opposition to that motion, this court finds that the motion to dismiss should be denied.

Both sides spent considerable effort in the preparation of their memorandums and at the evidentiary hearing. This court is appreciative of their efforts and, in particular, their respective briefs. The court finds it interesting that the city's brief tends to emphasize the case law and that the defendant's brief, the facts.

A municipality is granted authority to adopt and enforce local police regulations within its jurisdiction under Section 3, Article XVIII of the Ohio Constitution. Such legislation must have a real and substantial relation to the public peace, health, safety, welfare or morals. *Cleveland* v. *Raffa* (1968), 13 Ohio St. 2d 112, 42 O.O. 2d 329, 235 N.E. 2d 138; *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 4 O.O. 2d 113, 146 N.E. 2d 854. Generally, as long as the legislation has that real and substantial relation and is not arbitrary, discriminatory, capricious or unreasonable, it will not infringe upon the United States or Ohio Constitutions. *Kelley* v. *Johnson* (1976), 425 U.S. 238; *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535, 26 O.O. 116, 49 N.E. 2d 412. It does not appear that the defendant is questioning this general authority.

This legislation is presumed to be constitutional. *State, ex rel. Jackman,* v. *Court of Common Pleas of Cuyahoga Cty.* (1967), 9 Ohio St. 2d 159, 38 O.O. 2d 404, 224 N.E. 2d 906; *Hoover* v. *Franklin Cty. Bd. of Commrs.* (1985), 19 Ohio St. 3d 1, 19 OBR 1, 482 N.E. 2d 575; *South Euclid* v. *Jemison* (1986), 28 Ohio St. 3d 157, 28 OBR 250, 503 N.E. 2d 136. Local governments are presumed to be familiar with their community conditions and the needs of their citizens, and they can best formulate the appropriate legislation. *Allion* v. *Toledo* (1919), 99 Ohio St. 416, 124 N.E. 237, 6 A.L.R. 426. The burden is on the defendant to demonstrate that the action of the city council is clearly erroneous. *Benjamin* v. *Columbus, supra.*

The United States Supreme Court has long held that dogs may be destroyed or otherwise regulated, as, in the judgment of the legislature, is necessary for the protection of its citizens. *Sentell* v. *New Orleans & Carrollton RR. Co.* (1897), 166 U.S. 698; *Nicchia* v. *New York* (1920), 254 U.S.

228. See, also, *Downing* v. *Cook* (1982), 69 Ohio St. 2d 149, 23 O.O. 3d 186, 431 N.E. 2d 995. The Akron ordinance does not prohibit the ownership or possession of pit bulls; it only requires such owners to take certain measures, although stringent, to identify, insure, confine and restrain dogs defined as "pit bull terriers."

The defendant's challenge to the identification of pit bull terriers has no merit. A legislative body has a right to assign its own definition for certain words. In Section 92.25(A)(4) a definition for "pit bull terrier" is set forth with clarity and certainty. This definition generally conforms with the commonly accepted meaning given by people, including owners, notwithstanding some areas of disagreement. The Akron ordinance adequately and sufficiently defines "pit bull terrier" so that persons of ordinary intelligence are given fair notice. Courts have upheld the classification of a pit bull or pit bull terrier even when the legislation did not contain a definition. See *State* v. *Robinson* (1989), 44 Ohio App. 3d 128, 541 N.E. 2d 1092; *Lima* v. *McFadden* (June 30, 1986), Allen App. No. 1-85-22, unreported. Further, whether or not a particular mixed breed dog reasonably falls within the definition contained in Section 92.25(A)(4) is not an issue that can be reached by the defendant's motion to dismiss.

There is in the record sufficient evidence identifying pit bull or pit bull terriers as potentially vicious dogs. Findings of Fact No. 6 delineates some of these characteristics, and most are unique to pit bull terriers. This ordinance is constitutional even though some harmless or inoffensive pit bull terriers may be affected. *American Dog Owners Assn.* v. *Yakima* (1989), 113 Wash. 2d 213, 777 P. 2d 1046. A legislature may do so to abate the threat presented by other pit bull terriers. *Garcia* v. *Tijeras* (1988), 108 N.M. 116, 767 P. 2d 355. The enact-

ment is constitutional even though it may not affect unidentifiable pit bull dogs. *Garcia* v. *Tijeras, supra.*

A dog does not have a fundamental right to travel as suggested by the defendant. If there be a constitutional right to travel, it is for individuals, not dogs. The defendant offered little or no evidence on this issue, and his claim has no merit. Finally, if there be an issue, it should be raised by a non-resident and not the defendant who is an Akron resident.

There is the growing body of recent cases that have upheld similar or related legislation. See *State* v. *Robinson, supra; Lima* v. *McFadden, supra; Vanater* v. *South Point* (S.D. Ohio 1989), 717 F. Supp. 1236; *State* v. *Gilbert* (Sept. 2, 1988), Toledo M.C. No. CRB 88-05362 *et seq.,* unreported; *Singer* v. *Cincinnati* (Dec. 13, 1988), Hamilton C.P. No. A-8702891, unreported; *Garcia* v. *Tijeras, supra; State* v. *Peters* (Fla. App. 1988), 534 So. 2d 760; *American Dog Owners* v. *Yakima, supra; Starkey* v. *Chester* (E.D. Pa. 1986), 628 F. Supp. 196; *Hearn* v. *Overland Park* (1989), 244 Kan. 638, 772 P. 2d 758.

The Toledo Municipal Court in *State* v. *Gilbert, supra,* upheld an ordinance very similar to the Akron ordinance. Apparently the Toledo ordinance was the pattern used by the Akron drafters. In addition, *State* v. *Robinson, supra; American Dog Owners Assn., supra;* and *Singer* v. *Cincinnati, supra,* provide excellent analyses of most of the issues raised by the defendant, and reference is suggested to these opinions.

The defendant has failed to prove an abuse of police power. He seems to be suggesting that this court substitute his judgment for the legislative discre-

tion. Generally, a court does not have that power.

It is ordered that the motion to dismiss filed by the defendant, Lawrence E. Tipton, be denied.

*Motion denied.*[1]

APPENDIX

ORDINANCE NO. 656-1989 amending and/or supplementing Title 9, Section 92.25 of the Code of Ordinances of the City of Akron, Ohio, 1985, by placing regulations on all owners of pit bulls; and declaring an emergency.

BE IT ENACTED by the Council of the City of Akron, Ohio:

**Section 1.** That it hereby amends and/or supplements Title 9, Section 92.25 "Control of Dogs," of the Code of Ordinances of the City of Akron, Ohio, 1985, to read as follows:

§ *92.25 Control of Dogs*

(A) For the purpose of this section, the following words and phrases shall have the following meanings ascribed to them respectively:

(1) *"At Large."* Off the premises of the owner.

(2) *"Muzzle."* A leather, wire or device that, when fitted over an animal's snout, prevents biting and eating.

(3) *"Owner."* Any person owning, keeping, possessing, harboring, maintaining, or having the care, custody, or control of an animal.

(4) *"Pit Bull Terrier."* Any Staffordshire Bull Terrier, American Pit Bull Terrier, or American Staffordshire Terrier breed of dog, or any mixed breed of dog which contains, as an element of its breeding, the breed of Staffordshire Bull Terrier, American

---

[1] Reporter's Note: Following the filing of this opinion, on November 13, 1989, the defendant entered a no contest plea to the several counts of this case. The court made a finding of guilty, and the defendant was sentenced on November 13, 1989. The defendant did not, thereafter, appeal.

Pit Bull Terrier, or American Staffordshire Terrier as to be identifiable as partially of the breed of Staffordshire Bull Terrier or American Staffordshire Terrier.

(5) *"Unsecured."* Not securely confined indoors, or not securely restrained by means of a collar and chain, pen, fence, or similar physical device, and in such a manner which effectively prevents the dog from going beyond the premises of the owner.

(6) *"Vicious Dog."* Any dog that, while off the premises of the owner, bites or causes physical harm to a human being, domestic animal, or feline, on one or more occasions or any dog that, while on the premises of the owner or the premises under the control of the owner bites or otherwise causes physical harm to mail carriers, utility workers, City of Akron employees, delivery persons or to any police or emergency person on one or more occasions.

(B) No person owning, keeping, possessing, harboring, maintaining, or having the care, custody, or control of a dog shall suffer or permit such dog to:

(1) Be at large within the city unless securely attached upon a leash held in the hand of a person in a manner which continuously controls the dog.

(2) Snap at or attempt to bite or attempt to cause physical harm to any other person, domestic animal, or feline, while the dog is off the premises of the owner, or while on premises which are not exclusively controlled by the owner.

(3) Cause physical harm to the property of another while the dog is off the premises of the owner, or while on premises which are not exclusively controlled by the owner.

(4) Bite or otherwise cause physical harm to any person, domestic animal, or feline, while the dog is off the premises of the owner, or while on premises which are not exclusively controlled by the owner.

(5) Bite or otherwise cause physical harm to mail carriers, utility workers, City of Akron employees, delivery persons or to any police or emergency person while the dog is on the premises of the owner or the premises under the control of the owner.

(C) Defenses.

(1) It shall be an affirmative defense to a violation of § 92.25(B) that the dog was:

(a) Securely confined in an automobile or cage which was adequately ventilated.

(b) Being used for lawful hunting purposes.

(c) Being exhibited at a public dog show, zoo, museum, or public institution.

(d) Engaged in any activity expressly approved by the laws of the state.

(2) No public law enforcement agency or member thereof, or a licensed private law enforcement agency or member thereof, shall be convicted of any violation of this section where the dog is owned by the agency and being utilized for law enforcement purposes.

(3) Lack of intent or knowledge is not a defense to a violation of this section.

(D) No person shall own, keep, possess, harbor, maintain, have the care, custody, or control of a vicious dog within the city.

(E) Any person owning, keeping, possessing, harboring, maintaining, or having the care, custody, or control of a "Pit Bull" shall:

(1) Identify the dog by having the dog wear, at all times, a "Pit Bull" collar available upon payment of a fee, from Customer Service;

(2) Post on the premises, in a conspicuous place where the dog is kept, at least one City issued warning sign

available, upon payment of a fee, from Customer Service. The sign shall be visible and capable of being read from the public highway or street;

(3) Identify the dog by having the dog tattooed with a code number provided by Customer Service;

(4) Notify the licensing authority and the animal control officer within 24 hours if the Pit Bull has died or has been sold or donated, and provide the licensing authority with the name, address, and telephone number of the new owner;

(5) Keep the dog secured at all times by one of the following means:

(a) Keep the dog inside the owner's home;

(b) Keep the dog in a locked pen which has a top, and has a concrete base with the fencing securely attached or anchored to the concrete perimeter to a depth of six (6) inches, locked fenced yard, or other locked enclosure which has a top and has a concrete base with the fencing securely attached or anchored to the concrete perimeter to a depth of six (6) inches;

(c) Keep the dog muzzled and on a chain-link leash or tether that is not more than six feet in length and which is held in the hand of a person who is of suitable age and discretion and is outside with the dog.

(6) Obtain liability insurance with an insurer authorized to write liability insurance in this state providing coverage in each occurrence, subject to a limit, exclusive of interest and costs, of not less than Fifty Thousand Dollars ($50,000.00) because of damage or bodily injury to or death of a person caused by the vicious dog and shall provide a certificate of insurance to Customer Service at the time the collar required by § 92.25(E)(1) is obtained;

(7) Not suffer or permit the dog to go unconfined on the premises of another;

(8) Annually register the dog, if the dog is more than three months of age, with the County Auditor. Failure of any dog at any time to wear a valid registration tag shall be prima-facie evidence of lack of registration;

(9) Vaccinate the dog against rabies by a licensed veterinarian at least once every three years; a tag indicating that said dog has been vaccinated against rabies must be worn by the dog at all times. Failure of any dog at any time to wear the rabies vaccination tag issued by the licensed veterinarian who administered the vaccine shall be prima-facie evidence of the dog's lack of vaccination against rabies;

(10) Provide two (2) color photos of the dog to Customer Service at the time the collar required by § 92.25 (E)(1) is obtained.

**Section 2.** That this ordinance is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health and safety and general welfare of said City, and provided this ordinance receives the affirmative vote to two-thirds of the members elected or appointed to Council, it shall take effect and be in force immediately upon its passage and approval by the Mayor; otherwise, it shall take effect and be in force at the earliest time allowed by law.