[Cite as *Mullins v. St Marys*, 2017-Ohio-8934.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

SHAWN MULLINS, ET AL.,

    PLAINTIFFS-APPELLEES,          CASE NO. 2-17-17

    v.

CITY OF ST. MARYS,                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Municipal Court
Trial Court No. 2017 CVH 00424

Judgment Affirmed

Date of Decision: December 11, 2017

APPEARANCES:

    *Zach G. Ferrall* for Appellant

    *William E. Huber* for Appellees

Case No. 2-17-17

**SHAW, J.**

{¶1} Defendant-appellant, City of St. Marys ("the City"), appeals the July 7, 2017 judgment of the Auglaize County Municipal Court finding in favor of plaintiffs-appellees, Shawn and Veronica Mullins ("the Mullins"), on their appeal of the City's designation of their dog as a "Dangerous Dog" under the local ordinance. The trial court determined that the local ordinance was in conflict with the state statutes governing control of dogs and found that the state law constitutionally preempted the local ordinance.

*Facts and Procedural History*

{¶2} On May 4, 2017, the Mullins initiated this case by filing an appeal and requesting a hearing on the City's designation of their dog, Titan, as a "Dangerous Dog" under St. Marys City Ordinance ("SMCO") 505.15(a)(2). The Mullins attached the "Official Notice" informing them of the "Dangerous Dog" designation, which indicated two incidents occurred one on April 1, 2017 and the other on April 15, 2017.[1] The Mullins raised a constitutional challenge to the local ordinance defining a "Dangerous Dog" on the grounds that it was in conflict with the corresponding Ohio Revised Code provisions and that the ordinance fails to provide

---

[1] We note that the City attached to its brief the incident reports from the above specified dates detailing the conduct of the Mullins' dog alleged to satisfy the City's "Dangerous Dog" designation. The City did not file these documents with the trial court and they were not made a part of the record. Accordingly, we cannot consider these documents in our review. Moreover, the City failed to provide a transcript of the hearing before the trial court on appeal. Thus, we do not have any other evidence of the dog's conduct before us. However, because the issues on appeal focus upon the legal question of constitutionality, we do not need to consider the specific facts of this case to render our decision.

-2-

proper notice to a dog owner by leaving certain key terms undefined. The City maintained that the local ordinance was a permissible exercise of its local police power under the Home Rule Amendment to the Ohio Constitution and did not conflict with state law.

{¶3} On July 7, 2017, the trial court issued a judgment entry finding the state law to take precedence over the local ordinance. The trial court granted the Mullins relief on their appeal of the "Dangerous Dog" designation by the City and found the local ordinance to be invalid.

{¶4} The City filed an appeal, raising the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**MUNICIPAL COURT ERRED BY RULING THAT ST. MARYS LOCAL DOG ORDINANCE IS IN CONFLICT WITH OHIO REVISED CODE STATUTES WHICH DEFINE A VICIOUS/DANGEROUS/NUISANCE DOG.**

**ASSIGNMENT OF ERROR NO. 2**

**MUNICIPAL COURT ERRED BY RULING THAT ST. MARYS LOCAL DOG ORDINANCE IS OVERBROAD OR OVERREACHED IN ITS SCOPE.**

{¶5} We elect to address the assignments of error together due to the fact that both assignments of error challenge the trial court's determination invalidating the St. Marys City Ordinance on constitutional grounds.

*First and Second Assignments of Error*

**{¶6}** In their first and second assignments of error, the City maintains that the trial court erred in determining SMCO 505.15 was constitutionally infirm on the basis of it being in conflict with the state-wide comprehensive statutory provisions forth in Revised Code Chapter 955 titled "Dogs"—in particular, R.C. 955.11, which defines a "Dangerous Dog." On appeal, the City argues that SMCO 505.15 is permissible under the Home Rule Amendment to the Ohio Constitution and is a valid exercise of its local police power.

*Standard of Review*

**{¶7}** The constitutionality of a statute or ordinance presents a question of law and is therefore reviewed under a *de novo* standard. *Andreyko v. Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, ¶ 11(1st Dist.). In determining the constitutionality of an ordinance, we are mindful of the fundamental principle requiring courts to presume the constitutionality of lawfully enacted legislation. *Akron v. Molyneaux*, 144 Ohio App.3d 421, 426 (9th Dist. 2001), citing *Univ. Hts. v. O'Leary*, 68 Ohio St.2d 130, 135 (1981). We grant such deference to legislative enactments because "the local legislative body is familiar with local conditions and is therefore better able than the courts to determine the character and degree of regulation required." *Lima v. Stepleton*, 3d Dist. Allen No. 1-13-28, 2013-Ohio-5655, ¶ 11, citing *Village of Hudson v. Albrecht, Inc.*, 9 Ohio St.3d 69, 71.

{¶8} Due to this presumption, the party challenging an ordinance has the burden of demonstrating, beyond a reasonable doubt, that the law is unconstitutional. *Hilton v. City of Toledo*, 62 Ohio St.2d 394, 396, (1980). Moreover, when considering the constitutionality of a legislative enactment, we are called to "liberally construe [it] to save it from constitutional infirmities." *State v. Robinson*, 44 Ohio App.3d 128, 130 (12th Dist.1989). However, in applying our liberal construction, we are not permitted to "simply rewrite laws in order to render them constitutional." *Id.*

*Home Rule Amendment*

{¶9} Section 3, Article XVIII of the Ohio Constitution (the "Home Rule Amendment") states that municipalities are authorized "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." As a result, the general laws of the State and the challenged ordinance should be harmonized as much as the language allows. *N. Ohio Patrolmen's Benevolent Assn. v. City of Parma*, 61 Ohio St.2d 375, 377 (1980). Nevertheless, we must also recognize that municipalities' home rule authority "is not absolute." *City of Tiffin v. McEwen*, 130 Ohio App.3d 527, 531 (3d Dist.1998); *accord Weir v. Rimmelin*, 15 Ohio St.3d 55, 56 (1984) ("The Home Rule Amendment to the Ohio Constitution

confers a significantly high degree of sovereignty upon municipalities. However, the amendment does not provide cities the absolute power of self-government.").

{¶10} Conflicts between local ordinances and state statutes may arise in a variety of circumstances. In determining SMCO 505.15 to be in conflict with corresponding Revised Code provisions governing a "Dangerous Dog," the trial court employed the "contrary directives" analysis, which requires a reviewing court to consider "whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa."[2] *Stepleton* at ¶ 16, quoting, *Village of Struthers v. Sokol*, 108 Ohio St. 263 (1923), paragraph two of the syllabus. "If we answer this question in the negative, then no conflict exists." *See id.*, citing *Sokol* at 268 ("No real conflict can exist unless the ordinance declares something to be right which the state law declares to be wrong, or vice versa."). When applying the contradictory directives test, we note that the degree of state regulation on the same issue as the local ordinance is immaterial. *See City of Cincinnati v. Hoffman*, 31 Ohio St.2d 163, 169 (1972) ("[I]n order for * * * a conflict to arise, the state statute must positively permit what the ordinance prohibits, or vice versa, regardless of the extent of state regulation concerning the same object.").

---

[2] The "contrary directives" conflict analysis consists of a three-part test: "whether (1) the ordinance is an exercise of the police power, rather than of local self-government, (2) the statute is a general law, and (3) the ordinance is in conflict with the statute." *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, ¶ 17. Here, the parties appear to agree that SMCO 505.15 is an exercise of police power and that Chapter 955 is a general law. *See Russ v. City of Reynoldsburg*, 5th Dist. Licking No. 16-CA-58, 2017-Ohio-1471, ¶ 21(finding the provisions contained in Revised Code Chapter 955 to be general laws). Thus, the only issue remaining is whether the local ordinance conflicts with the state statutes.

*Relevant Law*

**{¶11}** At the outset, we note that under R.C. 955.221(B)(3) "[a] municipal corporation may adopt and enforce ordinances to control dogs within the municipal corporation that are not otherwise in conflict with any other provision of the Revised Code." In the case *sub judice*, the City designated the Mullins' dog, Titan, a "Dangerous Dog" under SMCO 505.15(a)(2). The local ordinance defines a "Dangerous Dog" in the following manner:

**(a) The following definitions shall apply to this section:**

**(1) "Dangerous dog" is defined as a dog that, without provocation, has chased or approached in either a menacing fashion or an apparent attitude of attack, or has attempted to bite or otherwise endanger any person, while that dog is off the premises of its owner, keeper or harborer and not under the reasonable control of its owner, keeper, harborer or some other responsible person, or not physically restrained or confined in a locked pen which has a top or other locked enclosure which has a top.**

*(2) "Dangerous dog" is further defined as a dog which has, whether or not the dog is on or off the premises of its owner, keeper or harborer and not under the reasonable control of its owner, keeper, harborer or some other responsible person or not physically restrained, killed or caused serious injury to any person or to another animal.*

**(3) The definition of a "dangerous dog" for the purposes of this section does not include a "police dog" that has been trained or may be used to assist one or more law enforcement officers in the performance of their official duties.**

(Emphasis added).

-7-

{¶12} Section 955.11 of the Revised Code defines "Dangerous Dog," as follows:

> (A)     As used in this section:
>
> (1)(a) "Dangerous dog" means a dog that, without provocation, and subject to division (A)(1)(b) of this section, has done any of the following:
>
> > (i)   Caused injury, other than killing or serious injury, to any person;
> >
> > (ii)  Killed another dog;
> >
> > (iii)  Been the subject of a third or subsequent violation of division (C) of section 955.22 of the Revised Code.[3]
>
> (b)   "Dangerous dog" does not include a police dog that has caused injury, other than killing or serious injury, to any person or has killed another dog while the police dog is being used to assist one or more law enforcement officers in the performance of their official duties.

{¶13} Section 955.11 of the Revised Code further defines key terms used in the statute.

> (5) "Serious injury" means any of the following:

---

[3] Section R.C. 955.22(C) of the Revised Code states:

> (C) Except when a dog is lawfully engaged in hunting and accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of any dog shall fail at any time to do either of the following:
>
> > (1) Keep the dog physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape;
> >
> > (2) Keep the dog under the reasonable control of some person.

**(a) Any physical harm that carries a substantial risk of death;**

**(b) Any physical harm that involves a permanent incapacity, whether partial or total, or a temporary, substantial incapacity;**

**(c) Any physical harm that involves a permanent disfigurement or a temporary, serious disfigurement;**

**(d) Any physical harm that involves acute pain of a duration that results in substantial suffering or any degree of prolonged or intractable pain.**

**(7) "Without provocation" means that a dog was not teased, tormented, or abused by a person, or that the dog was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity.**

*Analysis*

**{¶14}** In its decision invalidating SMCO 505.15(a)(2) on constitutional grounds the trial court found that:

**An examination of the ordinance finds it to be stricter in application as to the determination of what is a dangerous dog than what qualifies under the state statute. Thus, the ordinance is in conflict with state statute and must fail. The evidence presented shows that the county dog warden indicated that he could not give a dangerous dog notification unless Titan had killed the other dog. Since the dog was not killed the issue was then brought under the City ordinances.**

**Further the petitioners raise the issue that the ordinance is overbroad and would exceed the police powers of the City. The ordinance by its plain language declares a dog a dangerous dog if it has caused serious injury to any person or animal. It**

> **excludes provocation as a defense and would include injuries to persons when that injury was in legitimate defense of a person and would further include killing animals or seriously injuring them while engaging in legitimate activities such as hunting.**
>
> **The Court finds that the ordinance thus fails on both aspects due to the conflict with the state statutes and due to its overreach.**

(Doc. No. 34).

{¶15} In comparing the two provisions, it becomes apparent, as the trial court noted, that SMCO 505.15(a) defines a "Dangerous Dog" more broadly than R.C. 955.11(A). For instance, the local ordinance attempts to incorporate elements of the Revised Code definitions of a "Nuisance Dog" in SMCO 505.15(a)(1), and the Revised Code definition of a "Vicious Dog" in SMCO 505.15(a)(2) under one inclusive definition of a "Dangerous Dog."[4] It is notable, that each of these three definitions in the Revised Code correspond to categorical prohibitions of specific conduct, exempt certain factual scenarios—i.e., provocation or an on duty police dog—and provide for distinct penalties. Whereas the local ordinance only provides for one such category. Furthermore,

---

[4] Pursuant to R.C. 955.11(A)(2)(b) a "nuisance dog" means a dog that without provocation and while off the premises of its owner, keeper, or harborer has chased or approached a person in either a menacing fashion or an apparent attitude of attack or has attempted to bite or otherwise endanger any person." R.C. 955.119(A)(6)(a) defines a "Vicious dog" as "a dog that, without provocation * * *, has killed or caused serious injury to any person." R.C. 955.11(A)(6)(b) exempts an on duty police dog and a dog that has killed or caused serious injury to any person while a person was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer of the dog from being designated a "Vicious Dog."

the local ordinance expands the designation of a "Dangerous Dog" to include one that has *killed or caused serious injury to any person or to another animal*, whereas the Revised Code only specifies within that context that a "Dangerous Dog" is one that has killed another dog. *See* R.C. 955.11(A)(1)(a)(ii).

{¶16} While we do not specifically find the decision of the City to employ a single and more expansive category of a "Dangerous Dog" to run afoul of the Home Rule Amendment and R.C. 955.221(B)(3), we are nevertheless struck by the lack of provision for key definitional terms and exemptions of legitimate scenarios in the local ordinance that are clearly provided for in the Revised Code. Unlike its counterpart, SMCO 505.15 fails to define "without provocation" as used in SMCO 505.15(a)(1), or "serious injury" as used in SMCO 505.15(a)(2). For reasons unknown, the City chose not to incorporate these important definitions into the local ordinance despite including the specific Revised Code terms in the definition of a "Dangerous Dog."

{¶17} Moreover, in reviewing the section of the local ordinance at issue in this case, SMCO 505.15(a)(2), we are troubled by the far reaching, and perhaps unintended, implications of the language contained in the ordinance. For instance, unlike SMCO 505.15(a)(1), SMCO 505.15(a)(2) does not provide for an exemption for provocation. In addition, SMCO 505.15(a)(2) states a dog may be designated a "Dangerous Dog" if it killed or caused serious injury to any person

-11-

or to <u>another animal</u> *whether or not the dog is on or off the premises of its owner, keeper or harborer and not under the reasonable control of its owner, keeper, harborer or some other responsible person or not physically restrained.*

{¶18} Consequently, justifiable scenarios, which are specifically granted impunity under the state law, fall under the umbrage of the local ordinance. For example, under SMCO 505.15(a)(2) a dog, other than a police dog performing official duties, may be deemed a "Dangerous Dog" if it comes to the aid or defense of a person who is being attacked by another person or animal, and causes death or serious injury to that person or animal. This is the case even if the altercation happens on the property where the dog is owned and the dog is protecting its owner. Further, under SMCO 505.15(a)(2) a dog may be deemed a "Dangerous Dog" if it seriously injures or kills another animal, regardless of whether or not the dog is on the property of its owner. Thus, a dog that is used for hunting or one that is attacked by another dog that wanders onto the property where the dog is lawfully in its own backyard may be deemed a "Dangerous Dog" if it kills or seriously injures the hunted prey or the aggressor dog—not to mention an occasional squirrel or rabbit that may stray onto the property.

{¶19} We question the wisdom of drafting a local ordinance that lacks sufficient context and specificity in its definitional provisions, especially when the Revised Code provides a comprehensive template for the regulation of dogs. We

acknowledge that under the "home rule authority" municipalities have some sovereignty to exercise their police powers to meet the needs of their local community. However, the record in this instance is devoid of any rationale substantiating such a sweepingly vague local ordinance governing dangerous dogs. The record further indicates that a hearing was held before the trial court where such evidence may have been presented, but a transcript of those proceedings was not provided on appeal. As the appellant in this case, it was incumbent upon the City to provide this Court with a complete record for review.

{¶20} For these reasons, we conclude that the lack of precision and key definitional terms, the overall unartful drafting of SMCO 505.15, and the seemingly arbitrary expansion of the "Dangerous Dog" definition all support the trial court's determination that the City exceeded its powers under the Home Rule Amendment, and by virtue of these facts place the ordinance in conflict with the corresponding provisions of Chapter 955 of the Revised Code, which regulates dogs to a more explicit degree. Accordingly, we do not find that the trial court erred in finding the state law to take precedence over the local ordinance. The first and second assignments of error are overruled and the judgment is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**

Case No. 2-17-17