DAVIS, Appellant,

v.

CITY OF GREEN, Appellee.*

[Cite as *Davis v. Green* (1995), 106 Ohio App.3d 223.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17093.

Decided Sept. 20, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 74 Ohio St.3d 1523, 660 N.E.2d 743.

224

*William Love II,* for appellant.

*Thomas Musarra,* for appellee.

WISE, Judge.

Plaintiff-appellant, Bill Davis, appeals from the trial court's entry of summary judgment in favor of defendant-appellee, the city of Green. We affirm.

Appellant was a candidate for mayor of Green in 1993. During the course of his campaign, appellant placed a temporary mobile sign on a flatbed trailer at various commercial and residential locations within the city, urging citizens to vote for him in the upcoming election. On two occasions when the sign was located in residential areas, the city zoning inspector issued violation notices to the property owners, advising them that display of the sign violated Green Zoning Ordinance, Article VIII, Section 702.30 (Green Codified Ordinance 1292.05).

On December 22, 1993, appellant sued the city of Green for damages and sought a declaratory judgment that Green Codified Ordinance 1292.05 was unconstitutional and inhibited his First Amendment right of free expression. Appellant moved for summary judgment and supported his motion with his affidavit and exhibits. The city responded and included its own affidavit and exhibits. The court overruled appellant's motion for summary judgment and found the ordinance to be constitutional. It concluded that the ordinance was content-neutral and served an important governmental interest, and that appellant had ample alternative methods of communication available to him.

Appellant appeals, asserting a single assignment of error:

"The trial court erred in overruling appellant's summary judgment motion and finding appellee's statute limiting political signs constitutional."

Green Codified Ordinance 1292.05 sets forth the maximum square footage permissible for signs erected within the Green city limits. The maximum square footage permissible pursuant to the ordinance varies, depending on the nature of the sign and whether the sign is erected in a residential area, in an institutional area, or in a business area. Under the ordinance, political signs erected in residential areas are limited to a maximum size of six square feet. Real estate signs erected in residential areas are limited to five square feet. Construction signs erected in a residential subdivision may be thirty-two square feet for the subdivision and twenty square feet for a single family lot. Signs required for public safety purposes are subject to no size restrictions.

Appellant argues that the trial court erred in overruling his motion for summary judgment and in finding the ordinance constitutional because, through the ordinance, the city of Green (1) impermissibly regulates speech on the basis of content; (2) limits political speech more than it limits commercial speech; and (3) arbitrarily applies the ordinance. He bases his third argument on the fact

that the city sent notices to two of his supporters after they displayed, in a residential area, a thirty-two foot square sign urging his election, while permitting, several months later, a sign of the same size urging voters to "Vote Yes Issue 2 Paramedic–Ambulance–Fire Operating Levy."[1]

## A

In reviewing a trial court's ruling on a summary judgment motion, an appellate court applies the same standard used by the trial court. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. Pursuant to Civ.R. 56(C), summary judgment is proper if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. It must appear from the evidence that reasonable minds can come to only one conclusion and, viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Id.* The burden of establishing the appropriateness of summary judgment is on the moving party. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802.

## B

Although signs are a form of expression protected by the First Amendment to the United States Constitution, the regulation of the physical characteristics of signs is within a municipality's police powers. *Ladue v. Gilleo* (1994), 512 U.S. 43, ——, 114 S.Ct. 2038, 2041–2042, 129 L.Ed.2d 36, 43; *Norton Outdoor Advertising v. Arlington Hts.* (1982), 69 Ohio St.2d 539, 540, 23 O.O.3d 462, 462–463, 433 N.E.2d 198, 199–200. The permissible manifestation of that power with respect to a specific regulation is dependent on, first, a determination of whether the regulation is content-based or content-neutral, and then, based on the answer to that inquiry, application of the proper level of scrutiny to the regulation in question. *Ladue v. Gilleo,* 512 U.S. at ——, 114 S.Ct. at 2047–2048, 129 L.Ed.2d at 50 (O'Connor, J., concurring).

A content-based regulation is subjected to exacting scrutiny; that is, "[t]he State must show that the 'regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.'" *Burson v. Freeman* (1992), 504 U.S. 191, 198, 112 S.Ct. 1846, 1851, 119 L.Ed.2d 5, 14. "With rare exceptions, content discrimination in regulations of the speech of private citizens on private property or in a traditional public forum is presump-

---

1. Appellant's supporters were not fined or prosecuted for posting his signs.

tively impermissible." *Ladue*, 512 U.S. at ——, 114 S.Ct. at 2047, 129 L.Ed.2d at 50 (O'Connor, J., concurring).

 With respect to content-neutral regulations, a municipality "may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661, 675. Absolute prohibition of a manner of disseminating expression, even if reasonably regulated in place and time, is generally an unconstitutional and unreasonable interference with First Amendment rights. *Kovacs v. Cooper* (1949), 336 U.S. 77, 81–82, 69 S.Ct. 448, 450–451, 93 L.Ed. 513, 519.

 The principal inquiry in determining whether a regulation of speech is content-based or content-neutral is "whether the government has adopted [the] regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. at 791, 109 S.Ct. at 2754, 105 L.Ed.2d at 675. The government's purpose in enacting the regulation is the controlling inquiry. *Id.*

In the case before us, the purpose of the signing regulation is set forth in Green Codified Ordinance 1292.01, which provides:

"The purpose of this chapter is to promote the general health, safety and welfare of the residents of the City and maintain high residential value by:

"(a) Providing reasonable, yet appropriate, conditions for identifying goods sold or produced or services rendered in Business and Industrial Districts.

"(b) Controlling the size, location and design of permanent signs so that the appearance of such signs will be aesthetically harmonious with their surroundings.

"(c) Eliminating any conflict that would be hazardous between business or identification signs and traffic control signs and devices.

"(d) Ensuring that signs are located and designed to maintain a safe and orderly pedestrian and vehicular environment.

"(e) Reducing sign clutter."

██ ██ It is well settled that a city's goals of traffic safety and maintenance of its appearance are substantial. *Metromedia, Inc. v. San Diego* (1981), 453 U.S. 490, 507, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800, 815. The purposes set forth in Green Codified Ordinance 1292.01, protecting and promoting aesthetics and

public safety, are well within the realm of governmental interests that have been found to be substantial. Moreover, there is no language in Green Codified Ordinance 1292.05, or in any other section of Green Codified Ordinances Chapter 1292, to indicate that the city disagrees with, or is monitoring, the content of messages communicated in Green. Green Codified Ordinance 1292.05 regulates both commercial and noncommercial speech in residential, institutional, and business districts. It sets forth an overall scheme for the regulation of signs within the city and does not address political signs alone. Accordingly, Green Codified Ordinance 1292.05 is content-neutral. As such, it is not subject to the strict scrutiny test but must meet the time, place, and manner restrictions set forth in *Ward v. Rock Against Racism*, supra.

█ With respect to whether Green Codified Ordinance 1292.05 is narrowly tailored to serve the stated government interests of public safety and environmental aesthetics, the ordinance does not ban any form of speech but merely regulates the size of the signs permitted. The ordinance does not prohibit the placement of political signs within any area of the city, nor does it impose any time limitations on their placement.

We can find no support for appellant's argument that the ordinance affords a greater degree of protection to commercial speech than it does to political speech. While subdivision identification signs and construction signs in residential areas of Green are permitted to be larger than political signs, such signs can be erected only upon (1) the granting of a permit by the city following a review by the Green Planning and Zoning Commission, and (2) payment of a permit fee. Political signs are subject to neither requirement. Subdivision signs are permitted to be twenty square feet but, as permanent signs, are subject to design, construction, and placement standards to ensure that the sign enhances the adjacent architecture. Green Codified Ordinance 1292.14. Construction signs are permitted to be thirty-two square feet for a subdivision and twenty square feet for a single-family lot. However, a construction site is already aesthetically compromised and the city's interest in protecting the integrity of such a site is not the same as its interest in protecting the aesthetics of an established neighborhood. Accordingly, we find that Green Codified Ordinance 1292.05 is narrowly tailored to serve Green's significant governmental interest in preserving the safety and aesthetics of the city.

█ With respect to the third prong of the test set forth in *Ward v. Rock Against Racism, supra,* Green Codified Ordinance 1292.05 did not preclude the appellant from alternative channels of communication. In fact, it did not preclude him from the same channel of communication; it merely regulated the size of his message. The same residents who posted appellant's thirty-two foot sign could have posted six-foot signs that conformed with the ordinance. The

ordinance also permits political signs larger than six square feet in certain business and industrial districts. Additionally, billboards can be rented in areas where billboards are permitted, and signs similar to the one appellant used during his 1993 campaign are allowed at appropriate locations upon application and receipt of a zoning department permit.

Accordingly, we find Green Codified Ordinance 1292.05 to be a constitutional exercise of the city's right to regulate the time, place, and manner of signage within its boundaries.

C

Appellant also argues that the trial court incorrectly overruled his motion for summary judgment because he had shown that Green arbitrarily and unconstitutionally applies Green Codified Ordinance 1292.05.

Appellant attached his affidavit and several photographs to his motion for summary judgment. In his affidavit, he described one of the photographs as that of a thirty-two square foot sign erected in an R–1 residential area during April and May 1994 and containing the statement, "Vote Yes Issue 2 Paramedic–Ambulance–Fire Operating Levy." Because Green Codified Ordinance 1292.05 restricts political signs in residential areas to six square feet, and because two of appellant's supporters received notices in 1993 that displaying appellant's thirty-two foot political sign violated the ordinance, appellant argues that Green arbitrarily applies the ordinance. As a result, he maintains the ordinance is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Appellant further argues that, because the trial court characterized all of the exhibits attached to his affidavit as "commercial or public safety" signs, it erred by overlooking the obviously political nature of the Issue 2 sign.

While we agree with appellant that the Issue 2 sign clearly carries a political message, we find the court's mischaracterization error harmless in this instance. As we have already determined, the ordinance is not *per se* unconstitutional. In this respect, the Green ordinance differs from the ordinance considered in *Police Dept. v. Mosley* (1972), 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212, cited by appellant as requiring a finding that the Green ordinance is unconstitutional. In *Mosley,* the ordinance found to be unconstitutional banned all picketing in a particular area except for the "peaceful picketing of any school involved in a labor dispute." *Id.* at 93, 92 S.Ct. at 2288, 33 L.Ed.2d at 215. The *Mosley* ordinance was clearly content-based and subject to exacting scrutiny.

Although we agree that a city can unconstitutionally apply a facially neutral ordinance, appellant fails to demonstrate how he was harmed by such application

in this instance. Appellant's complaint alleging that the ordinance was unconstitutional was filed in 1993, following his unsuccessful bid for election to the office of mayor of Green. In his complaint, appellant sought both a declaratory judgment that the ordinance was unconstitutional and $20,000 in compensatory damages.

In considering a motion for summary judgment, a trial court is permitted to consider only the "pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact." Civ.R. 56(C). Since there were no depositions, answers to interrogatories, written admissions, transcripts, or written stipulations of fact in the record, the court had before it only appellant's pleading, the affidavits of the parties, and the material incorporated into the affidavits. There was nothing in the materials before the court that demonstrated how appellant was damaged by the Issue 2 sign posted in 1994 or how the city's granting of a permit with respect to the Issue 2 sign harmed him. There was nothing before the trial court evidencing that the city permitted any oversize political signs during the time that appellant sought to erect his or that his opponents were permitted signs larger than his.

As a result, the court's mischaracterization of the Issue 2 sign was harmless error in this instance.

Appellant's assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, P.J., and SLABY, J., concur.

EARLE E. WISE, J., retired, of the Fifth Appellant District, sitting by assignment.