**CITY OF AKRON, Appellee,**

v.

**MOLYNEAUX, Appellant.**

[Cite as *Akron v. Molyneaux* (2001), 144 Ohio App.3d 421.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 20309.

Decided July 11, 2001.

422

424

*Douglas J. Powley,* City Prosecutor, and *Gerald A. Larson,* Assistant City Prosecutor, for appellee.

*J. Dean Carro* and *Appellate Review Office, School of Law, University of Akron,* for appellant.

*Joseph A. Kodish,* for appellant.

*Per Curiam.*

Defendant, Kenneth A. Molyneaux, has appealed from his convictions in the Akron Municipal Court. We affirm in part and reverse in part.

Akron city police arrested defendant and a companion for placing handbills under the windshield wipers of vehicles parked in a mall parking lot. The handbills described defendant's political views. The distribution of the handbills was in violation of the mall's policy, as well as Akron Codified Ordinance 95.26, a littering ordinance that addresses the placement of handbills on vehicles. Defendant was charged with criminal trespass, a violation of Akron Codified Ordinance 131.08(B)(1), and placing handbills on vehicles, a violation of Akron Codified Ordinance 95.26. Prior to the trial, defendant moved to dismiss the littering charge. The court denied the motion. The jury found defendant guilty of all charges and the trial court sentenced him accordingly. Defendant timely appealed raising three assignments of error for review.

## ASSIGNMENT OF ERROR I

"The trial court erred in denying [defendant's] motion to dismiss, made on First Amendment grounds. The littering ordinance under which [defendant] was charged violates the free speech protections of the United States and Ohio constitutions, because it is facially overbroad and because it does not survive intermediate scrutiny. * * *"

In defendant's first assignment of error, he argues that the trial court erred in denying his motion to dismiss the littering charge because Akron Codified Ordinance 95.26 is facially overbroad and does not pass intermediate scrutiny. We agree to the extent addressed.

 Before addressing the merits of defendant's claims, we note that there are handwritten notes on the file jacket that indicate that the trial court denied defendant's motion to dismiss, as well as his Crim.R. 29 motion for acquittal, addressed in Assignment of Error II. However, there is no indication that the denials were ever journalized. The Supreme Court of Ohio in *State ex rel. White v. Junkin* (1997), 80 Ohio St.3d 335, 337, 686 N.E.2d 267, 268–269, noted that handwritten notations by a municipal judge upon a case jacket do not constitute judgment from which an appeal may arise unless there is some evidence presented in tandem with the case jacket indicating that such notations have in fact been journalized. There is no such indication in this case. However, when a trial court fails to rule on a motion, the motion will be considered denied. *Georgeoff v. O'Brien* (1995), 105 Ohio App.3d 373, 378, 663 N.E.2d 1348, 1351–1352. This presumption has been applied to outstanding motions in criminal

cases at the time a judgment of conviction is entered. *State v. Mollick* (Aug. 23, 2000), Lorain App. No. 99CA007381, unreported, at 3–4, 2000 WL 1197027. Therefore, we presume that the trial court denied defendant's motion to dismiss, as well as his Crim.R. 29 motion for acquittal.

 With respect to defendant's assignment of error, we review the trial court's denial of a motion to dismiss *de novo*. *State v. Benton* (2000), 136 Ohio App.3d 801, 805, 737 N.E.2d 1046, 1049. In determining the constitutionality of an ordinance, we are mindful of the fundamental principle requiring courts to presume the constitutionality of lawfully enacted legislation. *Univ. Hts. v. O'Leary* (1981), 68 Ohio St.2d 130, 135, 22 O.O.3d 372, 375–376, 429 N.E.2d 148, 151–152. Further, the legislation being challenged will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt. *Id.*

 The right to distribute, circulate, or otherwise disseminate ideas and written materials has long been recognized as constituting an integral part of the right of free speech. This right is clearly fundamental and protected by the First Amendment. *Martin v. Struthers* (1943), 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313, 1316–1317. The degree of First Amendment protection varies with the forum in which expression occurs. *Internatl. Soc. for Krishna Consciousness, Inc. v. Lee* (1992), 505 U.S. 672, 677, 112 S.Ct. 2701, 2704–2705, 120 L.Ed.2d 541, 549–550. For example, the right to free speech is at its most attenuated when the forum is private property, since the right of the property owner and his invitees are at stake. *Cincinnati v. Thompson* (1994), 96 Ohio App.3d 7, 16, 643 N.E.2d 1157, 1163–1164.

 In this case, defendant first asserts that the ordinance in question is facially overbroad because it restricts more speech than necessary to accomplish the city's purpose of litter prevention. There are two ways for a statute to be facially invalid: (1) it is unconstitutional in every conceivable application, or (2) it is overbroad, *i.e.*, it prohibits a substantial amount of constitutionally protected conduct. *Members of the City Council of Los Angeles v. Taxpayers for Vincent* (1984), 466 U.S. 789, 796, 104 S.Ct. 2118, 2124, 80 L.Ed.2d 772, 781.

 An overbreadth challenge is predicated on the proposition that "[a] clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned v. Rockford* (1972), 408 U.S. 104, 114–115, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222, 231. We note that legislation will not be invalidated as overbroad simply because constitutionally impermissible applications of the legislation are conceivable. Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court[.]"

*Taxpayers for Vincent*, 466 U.S. at 801, 104 S.Ct. 2118, 2126–2127, 80 L.Ed.2d at 784–785.

The Ohio Supreme Court addressed the question of overbreadth in *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 588 N.E.2d 116, as follows:

"The overbreadth doctrine represents an exception to the usual rules applicable to standing. It permits a party to challenge a statute on its face when others not presently before the court may be affected by the statute's application. The overbreadth doctrine applies only to First Amendment cases where the challenged law would have a 'chilling effect' on constitutionally protected freedoms of speech. If the statute represents a substantial prior restraint on free speech, then it may not be enforced against anyone unless it is narrowly tailored to prohibit only unprotected activity." (Citations omitted.) *Id.* at 357, 588 N.E.2d at 120.

A court has a "duty to adopt that construction which will save [a] statute from constitutional infirmity." *United States ex rel. Atty. Gen. v. Delaware & Hudson Co.* (1909), 213 U.S. 366, 407, 29 S.Ct. 527, 535, 53 L.Ed. 836, 849. Therefore, when enforcement of a statute proscribing criminal conduct is sought against constitutionally protected conduct, the common practice is not to invalidate the law in its entirety, but to reverse the defendant's conviction. *New York v. Ferber* (1982), 458 U.S. 747, 773, 102 S.Ct. 3348, 3363, 73 L.Ed.2d 1113, 1133; *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 614–615, 93 S.Ct. 2908, 2917–2918, 37 L.Ed.2d 830, 841–842.

Akron Codified Ordinance 95.26 provides:

"Placing on Vehicles

"No person shall throw or deposit any handbill in or on any vehicle. However, it shall not be unlawful in any public place for a person to hand out or distribute without charge to the receiver thereof, a handbill to any occupant of a vehicle who is willing to accept it, subject to the limitations prescribed in § 77.09."

The ordinance prohibits placing a handbill in or on a vehicle, regardless of whether the vehicle is located on public or private property. However, it allows distribution of the handbill on public property to an occupant of a vehicle who is a willing receiver. The ordinance provides no exception that allows a private property owner to distribute handbills to a willing vehicle occupant on his own property. For example, the ordinance would permit the owner of the mall to step from the curb of his parking lot into the street to deliver a handbill to the occupant of a vehicle but it would prohibit him from distributing the same handbill to the same vehicle occupant in his parking lot.

With regard to property rights, "[a] special respect for individual liberty in the home has long been part of our culture and our law [and] that principle has special resonance when the government seeks to constrain a person's ability to speak there." (Emphasis and citations omitted.) *Ladue v. Gilleo* (1994), 512 U.S. 43, 58, 114 S.Ct. 2038, 2047, 129 L.Ed.2d 36, 49. Further, property rights are not created by the Constitution but by independent sources, such as state law. *Delaware v. New York* (1993), 507 U.S. 490, 501–502, 113 S.Ct. 1550, 1557–1558, 123 L.Ed.2d 211, 222. An individual's private property interests are diverse, extend beyond actual fee ownership of real estate, and include the property owner's absolute right of dominion, use, or disposition over it. *Lucas v. Carney* (1958), 167 Ohio St. 416, 423, 5 O.O.2d 63, 67, 149 N.E.2d 238, 243.

The rights of private property owners are not absolute. For example, they are subject to restrictions such as zoning laws. *Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303. However, any exercise of the state's police power to restrict the right to use one's property must be "reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community." *Froelich v. Cleveland* (1919), 99 Ohio St. 376, 124 N.E. 212, paragraph three of the syllabus. Further, "[t]he means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation." *Id.* Restrictions on property that do not bear a reasonable relationship to the public welfare are arbitrary and unreasonable, and thus unconstitutional. *Euclid,* 272 U.S. at 395, 47 S.Ct. at 121, 71 L.Ed. at 314.

Many of the First Amendment cases cited by the parties address the property owner's "right to exclude" speakers from his property. However, it is this court's determination that the ordinance in this case infringes upon the protected speech of those individual private property owners that the ordinance prohibits from engaging in the distribution of handbills in or on vehicles on their own property. In other words, it restricts the property owner's "right to include" speech on his own property. Just as in *Martin v. Struthers* (1943), 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313, in the instant case we are faced with "the necessity of weighing the conflicting interests of [defendant] in the civil rights [he] claims, as well as the right of the individual [private property owner] to determine whether he is willing to receive [the] message, against the interest of the community[.]" *Id.,* 319 U.S. at 143, 63 S.Ct. at 863, 87 L.Ed. at 1317.

In *Martin,* the United States Supreme Court invalidated an ordinance that made it unlawful to knock on the door of a residence for the purpose of distributing literature. *Id.,* 319 U.S. at 149, 63 S.Ct. at 866, 87 L.Ed. at 1320. In

reaching that decision, the court made the following statement, which is relevant to the instant case:

"Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner distribution, it must be fully preserved. The dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas." *Id.,* 319 U.S. at 146–147, 63 S.Ct. at 865, 87 L.Ed. at 1319.

The scope of Akron Codified Ordinance 95.26 presents a realistic danger of significantly compromising First Amendment protections of those private property owners not before the court, as well as improperly restricting the dissemination of ideas. See *Taxpayers for Vincent,* 466 U.S. at 801–802, 104 S.Ct. at 2126–2127, 80 L.Ed.2d at 784–785. See, also, *Martin,* 319 U.S. at 147, 63 S.Ct. at 866, 87 L.Ed. at 1319. Since the ordinance restricts the right of a private property owner to speak or to allow others to speak on his own property, the ordinance must bear a reasonable relationship to the health, morals, peace, and welfare of the community. See *Euclid,* 272 U.S. at 395, 47 S.Ct. at 121, 71 L.Ed. at 314; *Froelich* at paragraph three of the syllabus.

The city asserts that the purpose of Akron Codified Ordinance 95.26 is to ·advance environmental aesthetics on both public and private property. This court notes that it is the city's burden to establish a reasonable relationship between its asserted goal and the means it has selected to accomplish it. See *Cincinnati v. Discovery Network* (1993), 507 U.S. 410, 416, 113 S.Ct. 1505, 1509–1510, 123 L.Ed.2d 99, 108. The city has not established a factual basis for concluding that a relationship actually exists between the placement of handbills on vehicles on private or public property and the prevention of litter that impacts the health, morals, peace, and welfare of the community. See *Krantz v. Ft. Smith* (C.A.8, 1998), 160 F.3d 1214, 1221–1222 (finding that defendants had not established that a cause-and-effect relationship existed between litter and the placement of handbills on parked cars). Additionally, "[a]ny burden imposed upon the city authorities in cleaning and caring for the streets as an indirect consequence of such distribution results from the constitutional protection of the freedom of speech * * *. This constitutional protection does not deprive a city of all power to prevent street littering. There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets." *Schneider v. State of New Jersey* (1939), 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed. 155, 165.

Even assuming that a logical connection exists, the ordinance interferes with private rights beyond the necessities of the situation and represents a substantial restraint on protected conduct. In sum, though attempting to reduce litter in the city of Akron, the impact of Akron Codified Ordinance 95.26 is far broader than necessary to achieve that objective and is, in fact, so broad as to interfere with the freedom of speech guaranteed by the First Amendment. As such, we find that Akron Codified Ordinance 95.26 is overbroad and unconstitutional beyond a reasonable doubt. Because we find that the ordinance is facially overbroad, we will not address defendant's argument that the ordinance does not pass intermediate scrutiny.

Defendant's first assignment of error is sustained.

### ASSIGNMENT OF ERROR II

"The city failed to introduce proof beyond a reasonable doubt on the element of opportunity to leave the premises under the trespassing ordinance. As a result, [defendant's] due process rights under the Fourteenth Amendment were violated. * * *"

In his second assignment of error, defendant argues that his conviction for trespassing was not supported by sufficient evidence. We find that defendant waived any objection under Crim.R. 29 to the sufficiency of the evidence.

Defendant waives any error "in the overruling of the motion for judgment of acquittal by failing to renew [his] motion at the close of all the evidence" unless the case is tried to the bench. *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 163, 14 O.O.3d 403, 403–404, 398 N.E.2d 781, 782, overruled on other grounds, *State v. Lazzaro* (1996), 76 Ohio St.3d 261, 667 N.E.2d 384. This court has long held that if a defendant fails to renew his motion for acquittal the defendant "waives his right to rely upon the ruling on that motion," *State v. Pinnick* (1937), 23 Ohio Law Abs. 560, 1937 WL 2245, and that the defendant "has not preserved [the] issue on appeal," *State v. Childress* (June 29, 1988), Lorain App. No. 4320, unreported, at 3, 1988 WL 70774. Further, this court has held that "[a] defendant may not challenge the sufficiency of the evidence on appeal unless he moved for acquittal at trial." *State v. Liggins* (Aug. 18, 1999), Summit App. No. 19362, unreported, at 3, 1999 WL 635711. See, also, *State v. Roe* (1989), 41 Ohio St.3d 18, 25, 535 N.E.2d 1351, 1360–1361.

In the case *sub judice*, defendant failed to renew his Crim.R. 29 motion for acquittal after presenting his defense. Further, the record before this court does not indicate that he moved for a judgment of acquittal after the jury returned a guilty verdict under Crim.R. 29(C). Since defendant waived any objection under Crim.R. 29 to the sufficiency of the evidence adduced at trial, we conclude that he

may not challenge the sufficiency of the evidence on appeal.[1] Defendant's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

"[Defendant] was the victim of selective prosecution by the city of Akron for conduct protected by the First Amendment, in violation of his Due Process and Equal Protection Rights under the United States and Ohio Constitutions. * * *"

Defendant argues in his third assignment of error that the trial court erred in denying his motion to dismiss the charge of littering because he was the only person prosecuted under the ordinance since its enactment.

Pursuant to App.R. 12(A)(1)(c), this court's disposition of the first assignment of error renders defendant's third assignment of error moot and, accordingly, it will not be addressed.

Defendant's first assignment of error is sustained. His second assignment of error is overruled. Defendant's third assignment of error is moot and, thus, is not considered due to our disposition on the first assignment of error. The judgment of the trial court is affirmed in part, reversed in part, and defendant's conviction for littering is reversed.

*Judgment affirmed in part*
*and reversed in part.*

BATCHELDER, P.J., and CARR, J., concur.

SLABY, J., concurs in part and dissents in part.

SLABY, Judge, concurring in part and dissenting in part.

While I concur with the majority opinion with respect to Assignment of Error II, I respectfully dissent from the majority's holding regarding Assignment of Error I, the constitutionality of Akron Codified Ordinance 95.26. The ordinance qualifies as a reasonable restriction on the manner in which handbills may be distributed in the city of Akron. Therefore, we should uphold the ordinance because it is narrowly tailored to serve a significant government interest and it leaves open ample alternate channels for communication as required by law. Further, I write separately to express my view on Assignment of Error III,

---

1. Defendant has further argued that because his conviction was based on insufficient evidence, the trial court violated his due process rights. Defendant alleges that this constitutional question negates the procedural requirements of Crim.R. 29. However, since defendant raised only the alleged insufficiency of the evidence, his tangential constitutional argument does not eliminate the requirements of Crim.R. 29.

defendant's claim of selective prosecution, which was not considered by the majority opinion.

The majority holds that Akron Codified Ordinance 95.26 is facially overbroad and, therefore, unconstitutional. The principle of overbreadth is designed to protect an individual's First Amendment rights. Under this principle, a statute is unconstitutional if it seeks to legitimately regulate activities "by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama* (1964), 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325, 338. In applying this rule, the Supreme Court has also held that when the statute regulates conduct, as compared to speech, the language must be substantially overbroad before it will be found unconstitutional. *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 615, 93 S.Ct. 2908, 2917–2918, 37 L.Ed.2d 830, 842. Facial invalidation "is, manifestly, strong medicine" that "has been employed by the [United States Supreme] Court sparingly and only as a last resort." *Id.*, 413 U.S. at 613, 93 S.Ct. at 2916, 37 L.Ed.2d at 841. See, also, *FW/PBS, Inc. v. Dallas* (1990), 493 U.S. 215, 223, 110 S.Ct. 596, 603, 107 L.Ed.2d 603, 616 (noting that "facial challenges to legislation are generally disfavored.") The First Amendment does not confer an absolute right to engage in expressive conduct whenever, wherever, or in whatever manner a speaker may choose. *Greer v. Spock* (1976), 424 U.S. 828, 836, 96 S.Ct. 1211, 1216–1217, 47 L.Ed.2d 505, 513.

Akron Codified Ordinance 95.26 provides:

"Placing on Vehicles

"No person shall throw or deposit any handbill in or on any vehicle. However, it shall not be unlawful in any public place for a person to hand out or distribute without charge to the receiver thereof, a handbill to any occupant of a vehicle who is willing to accept it, subject to the limitations prescribed in § 77.09."

Even if Akron Codified Ordinance 95.26 inhibits an individual's right to freedom of expression in some few instances, this effect is not substantial and is clearly outweighed by the city's interest in preventing litter. The ordinance does not attempt to regulate speech but instead deals with a legitimate problem by calling for a moderate and reasonable regulation of certain conduct to resolve the problem. Under these circumstances, it cannot be said that the ordinance is so overbroad as to warrant a finding of unconstitutionality.

Defendant also contends that Akron Codified Ordinance 95.26 is unconstitutional because it does not survive intermediate scrutiny as a content-neutral regulation of speech. The principal inquiry in determining whether a regulation of speech is content-neutral is "whether the government has adopted [the] regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d

661, 675. The government's purpose in enacting the regulation is the controlling inquiry. *Id.* Where a regulation is content-neutral, a municipality "may impose reasonable restrictions on the time, place, or manner of protected speech, provided * * * that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." (Citations omitted.) *Id.* Further, as noted by the majority, the law requires that the government establish a reasonable fit between the asserted goal and the ordinance chosen to accomplish that goal. *Cincinnati v. Discovery Network* (1993), 507 U.S. 410, 416, 113 S.Ct. 1505, 1509–1510, 123 L.Ed.2d 99, 108.

The requirement of narrow tailoring is satisfied "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's. interest; however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward,* 491 U.S. at 800, 109 S.Ct. at 2758, 105 L.Ed.2d at 681. This court has previously held that a city's goal of maintenance of its appearance is substantial. *Davis v. Green* (1995), 106 Ohio App.3d 223, 228, 665 N.E.2d 753, 756–757. The United States Supreme Court has found that the government has a substantial interest in promoting the safety and aesthetics of its cities. *Members of the City Council of Los Angeles v. Taxpayers for Vincent* (1984), 466 U.S. 789, 806–807, 104 S.Ct. 2118, 2129–2130, 80 L.Ed.2d 772, 788; *Metromedia Inc. v. San Diego* (1981), 453 U.S. 490, 507–508, 101 S.Ct. 2882, 2892–2893, 69 L.Ed.2d 800, 815.

Applying this framework to the instant case, both parties acknowledge in their briefs and I agree that the ordinance at issue is content-neutral. There is no language in Akron Codified Ordinance 95.26, or in any other section of Akron Codified Ordinances Chapter 95, to indicate that the city disagrees with, or is monitoring, the content of handbills distributed in Akron. The ordinance addresses placing handbills on vehicles, without regard to the content of the handbills. Accordingly, Akron Codified Ordinance 95.26 is content-neutral. As such, it is subject to the time, place, and manner restrictions set forth in *Ward.*

With respect to the requirement that the ordinance be narrowly tailored, defendant argues that it is not narrowly tailored and suppresses more speech than is necessary, since a vehicle owner could put a sign on his dashboard advising handbill distributors that he does not want to receive a handbill. To support this proposition defendant relies on a number of United States Supreme Court opinions that address whether a government regulation burdens substantially more speech than necessary to further the underlying government interest.

First, defendant relies on *Bolger v. Youngs Drug Prod.* (1983), 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469, where the court held that a statute that prohibited all

mailing of unsolicited mail advertising contraceptives was not narrowly tailored to serve the goal of screening such materials from the view of children. *Id.,* 463 U.S. at 73, 103 S.Ct. at 2883–2884, 77 L.Ed.2d at 482. It found that recipients of unwanted mailings could avoid the mailings by throwing them away. *Id.,* 463 U.S. at 72, 103 S.Ct. at 2883, 77 L.Ed.2d at 481. Defendant also relies on *Schneider v. State* (1939), 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155, where the Supreme Court held that ordinances that absolutely prohibited handbilling on the streets were invalid. *Id.,* 308 U.S. at 162–163, 60 S.Ct. at 151–152, 84 L.Ed. at 165–66. Defendant also cites *Martin v. Struthers* (1943), 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313. There, the court invalidated a city ordinance prohibiting knocking on the door or ringing the doorbell of any residence for the purpose of distributing literature. The court held that the ordinance was not narrowly tailored to serve the goal of protecting citizens from having literature distributed to their homes because the householder could advise the visitor that he did not wish to receive the information. *Id.,* 319 U.S. at 146–148, 63 S.Ct. at 864–865, 87 L.Ed. at 1319.

Contrary to defendant's contentions, I am convinced that the ordinance is narrowly tailored to serve the city's significant concerns for the protection of aesthetic values of the city. The ordinance prohibits a person from throwing or depositing a handbill in or on a vehicle without the occupant's willingness to receive it, while allowing the distributor to give the handbill to a willing receiver. This restriction is clearly and specifically designed to prevent unwanted handbills from becoming the city's litter. Further, the ordinance is a subsection of Akron Codified Ordinances Chapter 95, the "Akron Anti–Litter Chapter." The title signifies that the chapter, which includes subsection 95.26, was enacted to prevent littering and thereby maintain the city's appearance, a significant government interest. Unlike the absolute ban on unsolicited mailing and handbilling in the *Bolger* and *Schneider* cases, respectively, Akron Codified Ordinance 95.26 does not strictly ban the distribution of handbills. It merely regulates the manner in which handbills may be distributed.

Next, defendant argues that the ordinance is not narrowly tailored because vehicle owners could put a sign on the dashboard of their car stating that they do not want to receive handbills. In *Martin,* the court found that householder could tell an unwanted visitor or solicitor that he did not wish to be disturbed and did not want to receive unwanted literature. *Martin,* 319 U.S. at 146–148, 63 S.Ct. at 864–866, 87 L.Ed. at 1319. Thus, when the unwilling recipient unexpectedly encountered a visitor distributing literature, he merely had to verbalize his desire not to receive the literature. In the instant case, the unwilling recipient would be expected to anticipate the receipt of objectionable material and, further, to prepare a sign to place on the car dashboard each time he plans to park his car

and exit the vehicle. I find this to be a much greater burden to place on an unwilling recipient of such information than the burden approved of by the United States Supreme Court in *Martin.* Accordingly, I would find that Akron Codified Ordinance 95.26 is narrowly tailored to serve Akron's significant government interest in maintaining its appearance.

It must also be demonstrated that the challenged ordinance leaves open ample alternative channels for communication of the information. Defendant contends that Akron Codified Ordinance 95.26 leaves defendant with no alternate means to convey his message anonymously.

The Supreme Court has noted that an absolute ban on anonymous speech would violate the First Amendment. *Buckley v. Am. Constitutional Law Found.* (1999), 525 U.S. 182, 199, 119 S.Ct. 636, 645–646, 142 L.Ed.2d 599, 614, citing *McIntyre v. Ohio Elections Comm.* (1995), 514 U.S. 334, 347, 357, 115 S.Ct. 1511, 1519, 131 L.Ed.2d 426 (finding a law that prohibited the distribution of anonymous campaign literature to be unconstitutional). Further, requiring a distributor to identify himself and destroy his anonymity tends "to restrict freedom to distribute information and thereby freedom of expression." *Talley v. California* (1960), 362 U.S. 60, 64, 80 S.Ct. 536, 538, 4 L.Ed.2d 559, 563.

Akron Codified Ordinance 95.26 does not preclude defendant from alternate channels of communication. In fact, it does not preclude him from the same channel of communication; it merely regulates the manner of his distribution. Notably, the ordinance does not ban anonymous speech. Defendant or other distributors of political views are free to use other traditional mediums for publicizing a political viewpoint, such as passing out handbills person-to-person, posting messages on community bulletin boards, holding·signs, and posting information to the Internet.[2] Specifically, the posting of a message on a community bulletin board or posting information to the Internet satisfies defendant's desire to spread his message anonymously. It is not necessary to pin a handbill under the windshield wiper of a parked car in order to exercise one's constitutional guarantee to express opinions anonymously.

As a final step in this analysis, the ordinance must reasonably advance the city's significant interest in preventing litter and, thereby, maintain aesthetics. In *Metromedia,* 453 U.S. at 508, 101 S.Ct. at 2892–2893, 69 L.Ed.2d at 815, the United States Supreme Court explained that where the source of the problem has been identified—here, the handbills being placed on parked cars—the "most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." *Id.* Akron Codified Ordinance 95.26 does just that.

---

2. Defendant's brief indicates that he operates a website on which he posts his political views to the public.

Accordingly, I would find Akron Codified Ordinance 95.26 to be a constitutional exercise of the city's right to regulate the time, place, and manner of distribution of handbills within its boundaries. For the foregoing reasons, I respectfully dissent from the majority's holding with respect to assignment of error one.

Regarding defendant's third assignment of error, he argues that the trial court erred in denying his motion to dismiss the charge of littering because he was the only person prosecuted under the ordinance since its enactment. I disagree.

An appellate court reviews the trial court's denial of a motion to dismiss *de novo*. *State v. Benton* (2000), 136 Ohio App.3d 801, 805, 737 N.E.2d 1046, 1049. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *State v. Getsy* (1998), 84 Ohio St.3d 180, 203, 702 N.E.2d 866, 888. In *State v. Flynt* (1980), 63 Ohio St.2d 132, 134, 17 O.O.3d 81, 82, 407 N.E.2d 15, 17, the Ohio Supreme Court addressed the elements for establishing a selective-prosecution claim:

"To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie*, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." (Citation omitted.)

In *Cleveland v. Trzebuckowski* (1999), 85 Ohio St.3d 524, 532, 709 N.E.2d 1148, 1154–1155, the Supreme Court broadened the second-prong of the test so as to include any selection deliberately based upon any arbitrary classification. Furthermore, the Ohio Supreme Court has held that "[a] mere showing that another person similarly situated was not prosecuted is not enough; a defendant must demonstrate actual discrimination due to invidious motives or bad faith." *State v. Freeman* (1985), 20 Ohio St.3d 55, 58, 20 OBR 355, 357, 485 N.E.2d 1043, 1046.

I would conclude that defendant has failed to meet the heavy burden of establishing either prong of the selective-prosecution test. There is no evidence in the record that defendant was singled out for prosecution or that the prosecutor's decision to pursue criminal charges against defendant was made in furtherance of some invidious purpose, in bad faith, or was based upon some unlawful consideration. Defendant's selective-prosecution claim is without merit. Consequently, I would conclude that the trial court did not err in denying defendant's motion to dismiss based on selective prosecution, and I would overrule defendant's third assignment of error.