[Cite as *Russ v. Reynoldsburg*, 2017-Ohio-1471.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DARLENE RUSS | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| CITY OF REYNOLDSBURG | : | Case No. 16-CA-58 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Licking County
Municipal Court, Case No. 2015 CVF
2039


JUDGMENT:      Reversed, Judgment Entered


DATE OF JUDGMENT:      April 19, 2017


APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

J. PHILIP CALABRESE                    JOSEPH R. DURHAM
Porter, Wright Morris & Arthur LLP      Eastman & Smith LTD.
950 Main Avenue, Suite 500             100 E. Broad Street, Suite 2100
Cleveland, Ohio 44113                  Columbus, Ohio 43215


                                       And

                                       JAMES E. HOOD
                                       MATTHEW R. ROTH
                                       Reynoldsburg City Attorney
                                       7232 East Main Street
                                       Reynoldsburg, Ohio 43068

*Baldwin, J.*

**{¶1}** Plaintiff-appellant Darlene Russ appeals from the July 18, 2015 Judgment Entry of the Licking County Municipal Court denying her complaint for declaratory judgment and entering judgment in favor of defendant-appellee City of Reynoldsburg.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellant Darlene Russ moved from upstate New York to the City of Reynoldsburg in Licking County, Ohio during Memorial Day weekend in 2014. At the time, she had a dog that she described as "a mixed Pit, some Terrier." Transcript at 11. Appellant conceded that veterinary records classify the dog as a pit bull. Appellant testified that she obtained a license for the dog after registering it with the Licking County Auditor and that on the day she moved into her apartment, she was cited for keeping, harboring, or owning a vicious dog in violation of Reynoldsburg Codified Ordinance Section 505.35 (a), which prohibits owning, harboring or keeping a vicious dog. Section 505.01(m) defines a vicious dog, in part, as a pit bull. Ultimately, the case against appellant was dismissed.

**{¶3}** Appellant, on September 24, 2015, filed a verified complaint for declaratory judgment in Licking County Municipal Court, challenging the constitutionality of Reynoldsburg's Ordinances prohibiting the ownership of dogs that the City considers pit bulls. Appellant specifically sought a declaration that appellee could not enforce its prohibitions against owning, keeping, or harboring a pit bull and that Section 505.01(m)(5) of the Codified Ordinances "impermissibly conflicts with State law in violation of the Home Rule Amendment to the Ohio Constitution, R.C. 955.221, or both…" After Appellee City of Reynoldsburg filed an answer, appellant filed a Motion for Judgment on the Pleadings.

The American Society for the Prevention of Cruelty to Animals filed an amicus curiae brief on November 23, 2015. Appellee filed a memorandum in opposition to the Motion for Judgment on the Pleadings and a Motion for Summary Judgment on December 15, 2015. As memorialized in a Judgment Entry filed on March 21, 2016, both the Motion for Judgment on the Pleadings and the Motion for Summary Judgment were denied.

{¶4} A bench trial was held on March 21, 2016. Both parties filed post trial briefs. The trial court, as memorialized in a Judgment Entry filed on July 18, 2016, denied appellant's complaint for declaratory judgment and entered judgment in favor of appellee. The trial court specifically found that R.C. 955.11(A)(6)(a) and 955.221(B)(3) were not general laws and that the City of Reynoldsburg did not exceed its authority under the Home Rule Amendment to the Ohio Constitution.

{¶5} Appellant now raises the following assignments of error on appeal:

{¶6} THE MUNICIPAL COURT ERRED WHEN IT BECAME THE FIRST COURT IN OHIO TO HOLD THAT CHAPTER 955 OF THE OHIO REVISED CODE, WHICH REGULATES DOG OWNERSHIP IN THE STATE, IS NOT A GENERAL LAW.

{¶7} THE CITY OF REYNOLDSBURG'S ORDINANCES PROHIBITING THE OWNERSHIP OF DOGS IT CONSIDERS PIT BULLS EXCEED THE CITY'S AUTHORITY UNDER THE HOME RULE AMENDMENT TO THE OHIO CONSTITUTION BECAUSE THEY PROHIBIT THAT WHICH STATE LAW PERMITS AND SPECIFICALLY LICENSES.

STANDARD OF REVIEW

{¶8} The constitutionality of a statute or ordinance presents a question of law and is therefore reviewed under a de novo standard. *Andreyko v. Cincinnati,* 153 Ohio App.3d 108, 2003-Ohio-2759, 791 N.E.2d 1025 (1st Dist). In determining the

constitutionality of an ordinance, we are mindful of the fundamental principle requiring courts to presume the constitutionality of lawfully enacted legislation. *Akron v. Molyneaux*, 144 Ohio App.3d 421, 426, 760 N.E.2d 461 (9th Dist. 2001), citing *Univ. Hts. v. O'Leary*, 68 Ohio St.2d 130, 135, 429 N.E.2d 148 (1981). The legislation being challenged will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt. *Molyneaux,* 144 Ohio App.3d at 426, 760 N.E.2d 461.

I, II

**{¶9}** Appellant, in her first assignment of error, argues that the trial court erred in holding that the provisions of Chapter 955, as amended by House Bill 14 in 2012, are not general laws.  In her second assignment of error, appellant contends that the City of Reynoldsburg's pit bull Ordinances conflict with state law and exceed its authority under the Home Rule Amendment to the Ohio Constitution.

**{¶10}** Article XVIII, Section 3 of the Ohio Constitution gives municipalities their powers of home rule. Article XVIII, Section 3 provides as follows: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." The Ohio Supreme Court has established the following three-part test to determine whether a municipal ordinance must yield to the provisions of a state statute: "A state statute takes precedence over a local ordinance when (1) the ordinance is in conflict with the statute, (2) the ordinance is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law." *Canton v. State of Ohio,* 95 Ohio St.3d 149, 151, 2002-Ohio-2005, 766 N.E.2d 963, citing *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted*, 65 Ohio St.3d 242, 244-245, 602 N.E.2d 1147 (1992), and *Auxter v. Toledo*, 173 Ohio St. 444, 183 N.E.2d 920 (1962).

**{¶11}** At issue in the case sub judice is whether or not R.C. Chapter 955 is a general law. The trial court, in its July 18, 2016 Judgment Entry, found that it was not.

**{¶12}** The Ohio Supreme Court has set forth a four-part test for evaluating whether a statute is a general law in *Canton, supra*: "To constitute a general law for purposes of home-rule analysis, a statute must (1) be part of a statewide and comprehensive legislative enactment, (2) apply to all parts of the state alike and operate uniformly throughout the state, (3) set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulations, and (4) prescribe a rule of conduct upon citizens generally." *Id.* at syllabus. We note that, in *Lima v. Stepleton*, 3rd Dist. Allen No. 1-13-28, 2013-Ohio-5655, 5 N.E.3d 721, the City of Lima conceded that R.C. Chapter 955 was a general law.

**{¶13}** The trial court, in this matter, found that "the language in R.C. 955.11(A)(6)(a) and 955.221(B)(3) must be construed as being part of a statewide and comprehensive legislative enactment" and that the first and second prongs of the *Canton* test were met. We concur.

**{¶14}** Ohio Revised Code Chapter 955 is titled "Dogs" and contains state-wide comprehensive provisions relating to dog and kennel licenses, impounding, assistance dogs and other dog-related matters. R.C. 955.11(A)(6)(a), cited by the trial court, defines a "vicious dog" as follows:

(6)(a) "Vicious dog" means a dog that, without provocation and subject to division (A)(6)(b) of this section, has killed or caused serious injury to any person.

(b) "Vicious dog" does not include either of the following:

(i)      A police dog that has killed or caused serious injury to any person while the police dog is being used to assist one or more law enforcement officers in the performance of their official duties;

(ii)      A dog that has killed or caused serious injury to any person while a person was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer of the dog.

{¶15}   In turn, R.C. 955.221(B)(3) states that a "municipal corporation may adopt and enforce ordinances to control dogs within the municipal corporation that are not otherwise in conflict with any other provision of the Revised Code."

{¶16}  As noted by the trial court, Chapter 955, as amended by House Bill 14, is part of state-wide comprehensive legislation for regulating ownership of dogs and applies to all parts of the state alike and "does not differentiate between regions of the state or contrast townships versus counties versus towns or cities." R.C. Chapter 955 applies uniformly to the whole state without exception.

{¶17}  However, the trial court found that the third prong of the *Canton* test was not met. As is stated above, under such prong, the statute must "set forth police, sanitary, or similar regulations, rather than purport only to grant or limit legislative power of a municipal corporation to set forth police, sanitary, or similar regulation." The trial court specifically found that the provisions of R.C. 955.221(B)(3) "does not set forth 'police, sanitary, or similar regulations' so much as it establishes a  definition" and that R.C. 955.221(B)(3) both grants and limits the legislative authority of municipalities.

{¶18}  However, as noted by the Court *in Mendenhall v. City of Akron*, 117 Ohio St. 3d 33, 2008-Ohio-270, 881 N.E.2d 255 at paragraph 27,  "[S]ections within a chapter will not be considered in isolation when determining whether a general law exists. See

*Clermont Environmental Reclamation Co. v. Wiederhold* (1982), 2 Ohio St.3d 44, 2 OBR 587, 442 N.E.2d 1278. All sections of a chapter must be read in pari materia to determine whether the statute in question is part of a statewide regulation and whether the chapter as a whole prescribes a rule of conduct upon citizens generally. *Canton,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 38."

{¶19} As noted by the Ohio Supreme Court in *State v. Anderson*, 57 Ohio St.3d 168, 170, 566 N.E.2d 1224, [a]mong the regulations which have been upheld as legitimate exercises of police power are those regulations addressing the ownership and control of dogs." See also *Youngstown v. Traylor*, 123 Ohio St. 3d 312, 2009-Ohio-4184,914 N.E.2d 1026 at paragraph 9 in which the Ohio Supreme Court held as follows:

> Although dogs are "private property to a qualified extent, they are subject to the state police power, and 'might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens. * * * [L]egislatures have broad police power to regulate all dogs so as to protect the public against the nuisance posed by a vicious dog.' " *135 State v. Anderson* (1991), 57 Ohio St.3d 168, 170, 566 N.E.2d 1224, quoting *Sentell v. New Orleans & Carrollton RR. Co.* (1897), 166 U.S. 698, 701–704, 17 S.Ct. 693, 41 L.Ed. 1169.

{¶20} Moreover, as noted by appellant, "no provision of Chapter 955 at issue in this case relating to the designation of dogs as vicious, dangerous, or a nuisance, or to the ownership, keeping, or harboring of dogs, grants local governments any degree of authority." R.C. 955.22 contains no language specifically granting or limiting municipal

action. We find, based on the foregoing, that Chapter 955 sets forth police regulations and does not purport to grant or limit the legislative power of a municipality.

{¶21} The last prong of the *Canton* test, which was not addressed by the trial court, requires that Chapter 955, as amended by House Bill 14, prescribe a rule of conduct on citizens generally. We find that it does because it establishes rules that govern all Ohio residents who own dogs.

{¶22} Having found that Ohio Revised Code Chapter 955 is a general law, we must next consider whether or not the Reynoldsburg Ordinances are in conflict with Chapter 955, as amended by House Bill 14. The trial court never reached such issue. "[I]n order for such a conflict [between state laws and local ordinances] to arise, the state statute must positively permit what the ordinance prohibits, or vice versa, regardless of the extent of state regulation concerning the same object." *Cincinnati v. Hoffman,* 31 Ohio St.2d 163, 169, 285 N.E.2d 714 (1972).

{¶23} Reynoldsburg Codified Ordinance Section 501.01(m)(5) states that a dog that "[b]elongs to a breed that is commonly known as pit bull dog" is a "vicious dog." Reynoldsburg Codified Ordinance Section 505.35(a) provides that "[n]o person shall keep, or harbor any vicious dog… as defined in section 505.01(m) within the municipality." Thus, all pit bull dogs are labeled as "vicious" without regard to conduct and keeping or harboring them is prohibited.

{¶24} Prior to House Bill 14, R.C. 955.11(A)(6)(a)(iii) provided, in part, that a "vicious dog" meant "a dog that, without provocation….: (iii) Belongs to a breed that is commonly known as a pit bull dog…" R.C. 955.221(B)(3), which was not amended, states that a "municipal corporation may adopt and enforce ordinances to control dogs within

the municipal corporation that are not otherwise in conflict with any other provision of the Revised Code."

{¶25} House Bill 14, which became effective May 22, 2012, repealed the automatic inclusion of a pit bull as a vicious dog. As is stated above, House Bill 14 amended Section 955.11(A)(6) to define a "vicious dog" as follows:

(6)(a) "Vicious dog" means a dog that, without provocation and subject to division (A)(6)(b) of this section, has killed or caused serious injury to any person.

(b) "Vicious dog" does not include either of the following:

(i)      A police dog that has killed or caused serious injury to any person while the police dog is being used to assist one or more law enforcement officers in the performance of their official duties;

(ii)      A dog that has killed or caused serious injury to any person while a person was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer of the dog.

{¶26} While Reynoldsburg's Ordinances prohibit the ownership of pit bulls outright, Ohio Revised Code Chapter 955 has abolished breed-specific determinations of whether or not a dog is vicious or dangerous and focuses instead on the conduct of the individual dog.  Under Ohio law, Ohio residents may keep or own any dog they choose, provided that if the dog is determined to be "dangerous" as defined in R.C. 955.11(A)(1)(a), the owner must comply with R.C. 955.22. Thus, while a pit bull is automatically considered "vicious" under the Reynoldsburg Ordinances and ownership of the same is prohibited, a pit bull may or may not be considered "vicious" under Ohio Revised Code Chapter 955 based on its conduct. We find, on such basis, that there is a

conflict between Reynoldsburg's pit bull Ordinances and Chapter 955, as amended by House Bill 14. The Ordinances prohibit that what is permitted by Ohio statutes (ownership of dogs identified as pit bulls). See *Lima v. Stepleton*, 3rd Dist Allen. No. 1–13–28, 2013 -Ohio- 5655, 5 N.E.3d 721.

**{¶27}** Based on the foregoing, we find that Revised Code Chapter 955 is a general law and that the Ordinances at issue in this case conflict with state law and exceed appellee's authority under the Home Rule Amendment.

**{¶28}** Appellant's two assignments of error are, therefore, sustained.

**{¶29}** Accordingly, the judgment of the Licking County Municipal Court is reversed and, pursuant to App.R. 12(B), final judgment is entered in favor of appellant.

By: Baldwin, J.

Gwin, P.J. and

Hoffman, J. concur.